RECORD NO. 18-6980

In The

# United States Court of Appeals

### For The Fourth Circuit

## RONNIE WALLACE LONG,

*Petitioner – Appellant*,

**v.**

## ERIK A. HOOKS, Secretary, NC Dep't of Public Safety,

*Respondent – Appellee*.

### ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF NORTH CAROLINA AT GREENSBORO

———————

### PETITION FOR REHEARING *EN BANC*

———————

**Jamie T. Lau**
**Theresa A. Newman**
**DUKE UNIVERSITY SCHOOL OF LAW**
**210 Science Drive**
**Post Office Box 90360**
**Durham, North Carolina 27708**
**(919) 613-7764**

**G. Christopher Olson**
ATTORNEY AT LAW
**917 West Johnson Street**
**Raleigh, North Carolina 27605**
**(919) 624-3718**

*Counsel for Appellant*                    *Counsel for Appellant*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................. iii

STATEMENT REQUIRED BY FEDERAL RULE OF
APPELLATE PROCEDURE 35(b) ....................................................... 1

1. To resolve the majority's misinterpretation of the Supreme
   Court's decision in *Wetzel v. Lambert* ................................... 1

2. To resolve a conflict between the Supreme Court's Brady
   jurisprudence and the majority's holding that the No Impact
   Conclusion was reasonable ................................................ 2

3. To determine whether the majority's resolution of Mr. Long's
   constitutional claims undermines the integrity of the criminal
   justice system in North Carolina, a question of exceptional
   importance ................................................................ 5

BACKGROUND ............................................................................ 5

ARGUMENT ................................................................................ 9

I. THE MAJORITY'S DECISION MISINTERPRETS *WETZEL
   V. LAMBERT* BECAUSE THE NO IMPACT CONCLUSION IS
   INEXTICABLY INTERTWINED WITH THE STATE
   COURT'S CONSTITUTIONAL ERROR, NOT AN
   ALTERNATIVE GROUND FOR DENYING RELIEF ...................... 9

II. THE MAJORITY ERRS IN FINDING THE NO IMPACT
    CONCLUSION REASONABLE BECAUSE (1) THAT
    CONCLUSION CONFLICTS WITH ESTABLISHED
    PRECEDENT ON *BRADY*'S FAVORABILITY PRONG, AND
    (2) THE MAJORITY FAILS TO FULLY CONSIDER THE
    CONTEXT AND IMPACT OF THE WITHHELD EVIDENCE ...... 12

III. THE PETITION PRESENTS QUESTIONS OF
     EXCEPTIONAL IMPORTANCE ...................................... 16

i

CONCLUSION ................................................................................................17

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Arizona v. Youngblood*,
    488 U.S. 51 (1988)........................................................................16

*Brady v. Maryland*,
    373 U.S. 83 (1963)................................................................*passim*

*Harrington v. Richter*,
    562 U.S. 86 (2011)...........................................................5, 12, 16

*Kyles v. Whitley*,
    514 U.S. 419 (1995)..............................................................*passim*

*Long v. Hooks*,
    -- F.3d ----, No. 18-6980,
    2020 WL 89109 (4th Cir. Jan. 8, 2020)................................*passim*

*McQuiggin v. Perkins*,
    569 U.S. 383 (2013).......................................................................8

*Richardson v. Branker*,
    668 F.3d 128 (2012) ....................................................3, 8, 12, 16

*United States v. Bagley*,
    473 U.S. 667 (1985)................................................................. 3-4

*United States v. Ellis*,
    121 F.3d 908 (4th Cir. 1997) ....................................................13

*Wetzel v. Lambert*,
    565 U.S. 520 (2012)..............................................................*passim*

**STATUTES**

28 U.S.C. § 2254 .................................................................................. 7

28 U.S.C. § 2254(d) ............................................................................. 8

## STATEMENT REQUIRED BY FEDERAL RULE OF
## APPELLATE PROCEDURE 35(b)

Pursuant to Federal Rule of Appellate Procedure 35(b), Plaintiff-Appellant Ronnie Wallace Long ("Long") files this Petition for Rehearing En Banc of the panel opinion. *Long v. Hooks*, -- F.3d ----, No. 18-6980, 2020 WL 89109 (4th Cir. Jan. 8, 2020). This case raises issues of exceptional importance, including the level of tolerance that federal courts have for state misconduct unearthed by "a trickle of posttrial disclosures" revealing "a troubling and striking pattern" of suppression of favorable evidence in violation of Long's due process rights. *Id.* at *11 (Thacker, J., dissenting).

The panel majority ("majority") and dissenting opinions describe materially different cases with respect to both the relevant federal law and its application to the record. The following reasons warrant rehearing en banc:

1.    To resolve the majority's misinterpretation of the Supreme Court's decision in *Wetzel v. Lambert*.

The majority's treatment of the state court's "No Impact Conclusion"[1] misinterprets *Wetzel v. Lambert*, 565 U.S. 520 (2012). The majority and dissent agree that the state court's imposition of a preponderance of the evidence burden on Long's *Brady* claims patently conflicts with clearly established Supreme Court

---

[1] Throughout, "No Impact Conclusion" refers to the state court's judgment that "the cumulative [e]ffect of any [new evidence] with any value is so minimal that it would have had no impact on the outcome of the trial." J.A. 1359.

1

precedent. *See Long*, 2020 WL 89109, at *7; *12 (Thacker, J., dissenting). The majority, however, erroneously reasons that the No Impact Conclusion rendered the state court's constitutional error functionally harmless. *Id.* at *8. Specifically, it held that under *Wetzel*, the No Impact Conclusion constituted a reasonable alternative basis to deny relief. *Id.* This fundamentally misconstrues *Wetzel*, which stands only for the proposition that where two *analytically distinct* grounds support a judgment, constitutional error in one does not upset the other. *See Wetzel*, 565 U.S. at 424 n.* (emphasizing that the court used the word "[m]oreover" to signal different grounds for its decision). But here, the No Impact Conclusion is "inextricably intertwined" with the state court's erroneous analysis of each piece of evidence. *See Long*, 2020 WL 89109, at *12 (Thacker, J., dissenting). The state court expressly stated that its No Impact Conclusion was "*based on* [its] findings of fact and conclusions of law," rendering it "merely a cumulative view of the impact of each erroneously analyzed piece of *Brady* evidence, not an alternative ground for relief." *Id.* at *13 (Thacker, J., dissenting) (alteration in original). Therefore, *Wetzel* is simply inapposite.

> 2.     To resolve a conflict between the Supreme Court's *Brady* jurisprudence and the majority's holding that the No Impact Conclusion was reasonable.

The majority's holding that the No Impact Conclusion was objectively reasonable is erroneous for two reasons: First, the majority failed to hold that the

state court's inaccurate favorability analysis fatally plagued its materiality analysis, rendering that assessment objectively unreasonable.  It should be axiomatic that, if the state court erroneously attributed *no value* to the individual items of withheld evidence using the wrong analysis, its individual *and* summary assessments of the effect of withholding the evidence are necessarily infected with the same error.  *See id.* at \*18; *see also Richardson v. Branker*, 668 F.3d 128, 145 (2012) ("At the heart of [*Brady*'s materiality] inquiry is a determination whether the *favorable* evidence withheld from the defendant reasonably could be considered as placing the entire case in such a different light that confidence in the verdict is undermined.") (emphasis added).  This issue is similar, but not identical, to the majority's error discussed in Part I.  Here, even if the state court articulated the correct materiality standard under *Brady v. Maryland*, 373 U.S. 83 (1963)—which it did not—its conclusion would still be unreasonable because its analysis under *Brady*'s favorability prong conflicts with Supreme Court precedent, particularly *Kyles v. Whitley*, 514 U.S. 419 (1995).[2]

Second, a reasonable materiality assessment must consider the totality of circumstances and cannot ignore much of the record to support a finding that the withheld evidence was immaterial.  *United States v. Bagley*, 473 U.S. 667, 683

---

[2] As both the magistrate judge and district court concluded, the state court's favorability assessment was erroneous in nearly every way.  *See infra* Part II; J.A. 1670, 1724–25.

(1985).  In deeming the No Impact Conclusion reasonable, the majority's materiality assessment avoids grappling with the state court's erroneous favorability assessments and ignores much of the evidence in the record.  The majority relies almost exclusively on the victim's identification of Long and erroneously finds that "[Mr. Long's] description matched the one given [by the victim] at the scene." *Long*, 2020 WL 89109, at *11.  As the dissent points out, this finding is contrary to the record as a whole.  *Id.* at *15 (Thacker, J., dissenting).  When due weight is given to the full record—including the questionable identification and the suppressed evidence, which of course draws the identification further into question—it is beyond fair-minded disagreement that the evidence "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict" and therefore is material.  *Id.* at *12.

Finally, evidence that undermines confidence in the outcome of trial need not refute every piece of evidence against Long.  *See Kyles*, 514 U.S. at 453.  Thus, even if the identification here carried some weight,[3] the full record shows that confidence in the outcome would still be undermined.

---

[3] The unreliability of the identification is summarized in detail in Petitioner's Brief at pages 42–46, and in the Innocence Project Amicus Brief filed with this Court.

3.    To determine whether the majority's resolution of Mr. Long's constitutional claims undermines the integrity of the criminal justice system in North Carolina, a question of exceptional importance.

The majority decision explains that "habeas corpus proceedings are a guard against extreme malfunctions in the state criminal justice systems." *Long*, 2020 WL 89109, at *6 (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)). Here, such an extreme malfunction has occurred. Long has been incarcerated for more than forty-three years and has maintained his innocence since the time of his arrest. Because of state action, piecemeal disclosure of favorable evidence first occurred several decades after he was convicted and after the state originally claimed such evidence did not exist. *Id.* at *3. Dismissing Long's case under these circumstances perpetuates—rather than protects the accused from—extreme malfunctions in the criminal justice system and "provide[s] incentive for the state to lie, obfuscate, and withhold evidence." *Id.* at *22 (Thacker, J., dissenting). Rehearing en banc is warranted to uphold Long's constitutional rights and to protect the accused from the same severe malfunctions present here.

## BACKGROUND

Throughout Ronnie Long's 43 years of incarceration, he has consistently maintained his innocence and has made repeated efforts to unearth evidence to demonstrate it.

This action follows state court proceedings that commenced in 2005, when Long filed a Motion for Discovery. *Id.* at *3. During those proceedings, Long learned for the first time that State Bureau of Investigation ("SBI") forensic reports had been suppressed for nearly 29 years. The suppressed reports indicated that (1) Long was excluded as the source of hair found at the crime scene; (2) Long's hair was not present on the victim's clothes; (3) Long's clothing contained no traces of paint or fibers from the scene; and (4) partially burned matches recovered from the scene were different from matches found in the Long family car. J.A. 1454–74.

Long also learned that, because these SBI reports failed to link him to the crime, a Concord Police Department ("CPD") investigator created a second "summary report" of evidence collected in the case—which omitted information about the evidence above—with the apparent goal of concealing the SBI test results. *Compare* J.A. 1480–83 (summary report dated May 12, 1976), *with* 1484–85 (undated report).

Finally, Long learned that the CPD once had custody of biological evidence from the victim's sexual-assault kit. But in 2005, the CPD asserted that it could not find that evidence and had no record of what happened to it after a CPD sergeant received it in 1976. *See* J.A. 95–104.

In 2008, Long filed a Motion for Appropriate Relief ("MAR"), alleging that, by withholding favorable evidence, the state had violated his rights under *Brady*. In

2009, after an evidentiary hearing, the state court denied relief, concluding that Long failed to show that the "evidence was withheld by the State, that it was exculpatory, or that the result [of Long's trial] would have been different with the claimed evidence." J.A. 1359. Long filed the instant habeas petition, arguing that relief is warranted because the 2009 MAR Order was contrary to, or an unreasonable application of, clearly established *Brady* jurisprudence with respect to each of *Brady*'s three components: favorability, suppression, and materiality. *See* J.A. 65.

The magistrate judge agreed that the 2009 MAR Order unreasonably applied clearly established Supreme Court precedent by concluding that the evidence was neither favorable to Long nor suppressed. J.A. 1670, 1678. However, the judge found that the state court reasonably concluded that the suppressed, favorable evidence was immaterial and recommended granting Respondent's Motion for Summary Judgment. J.A. 1693–94, 1702. The district court adopted the magistrate judge's recommendation in full. J.A. 1724–25.

On January 8, 2020, after oral argument, the panel majority affirmed, concluding that, under *Wetzel*, the state court's conclusion that the cumulative effect of the withheld evidence had "*no impact* on the outcome of trial" was a reasonable alternative basis for denying relief. *Long*, 2020 WL 89109, at *7. The majority also concluded that the No Impact Conclusion was reasonable, and therefore 28 U.S.C. § 2254 required deference to the 2009 MAR Order. *Id.* at *8.

7

Judge Thacker dissented. She disagreed that *Wetzel* excused the pervasive constitutional errors throughout the state court's decision. She reasoned that the No Impact Conclusion was the product of the state court's repeated use of the wrong *Brady* standard and thus was not a reasonable alternative ground for denying Long's *Brady* claim. *Id.* at *13–14 (Thacker, J., dissenting). She further explained that "the majority's conclusion that the No Impact Conclusion is a reasonable materiality determination under § 2254(d) [was] patently incorrect," and "the description of the underlying crime and investigation set forth by the majority [was] not sufficiently complete so as to provide a full picture of what happened." *Id.* at *14 (Thacker, J., dissenting). With the "complete background laid bare," Judge Thacker concluded that "there is 'no possibility for fairminded disagreement' that the cumulative effect of the suppressed evidence, favorable to the defendant and suppressed by the state in order to make its own case appear stronger, clearly met *Brady*'s materiality requirement." *Id.* at *17, 21 (quoting *Richardson*, 668 F.3d at 149).

After concluding that the withheld evidence violated Long's constitutional rights, Judge Thacker explained that Long's case should be remanded for discovery and consideration of actual innocence under *McQuiggin v. Perkins*, 569 U.S. 383, 394–95 (2013). Judge Thacker concluded:

> In this circumstance, Appellant must prevail. To hold otherwise would provide incentive for the state to lie,

obfuscate, and withhold evidence for a long enough period
of time that it can then rely on the need for finality.  That,
I cannot abide.

*Long*, 2020 WL 89109, at *22 (Thacker, J., dissenting).

## ARGUMENT

**I.  THE MAJORITY'S DECISION MISINTERPRETS *WETZEL V.
LAMBERT* BECAUSE THE NO IMPACT CONCLUSION IS
INEXTICABLY INTERTWINED WITH THE STATE COURT'S
CONSTITUTIONAL ERROR, NOT AN ALTERNATIVE GROUND
FOR DENYING RELIEF.**

The majority decision misinterprets *Wetzel v. Lambert,* 565 U.S. 520 (2012)

and conflicts with Supreme Court *Brady* jurisprudence.   In *Wetzel*, the habeas

petitioner argued that certain impeachment evidence was withheld in violation of

*Brady*.   The state court had denied relief, holding that the evidence was not

"material." The federal district court denied the habeas petition.  The Third Circuit

reversed, holding that it was "'patently unreasonable' for the [state court] to presume

that whenever a witness is impeached in one manner, any other impeachment

evidence would be immaterial." *Id.* at 523.

The Supreme Court held that, under the Antiterrorism and Effective Death

Penalty Act ("AEDPA"), the circuit court failed to consider the state court's

alternative ground for denying relief—that the evidence in question was ambiguous

and therefore was not exculpatory or impeaching. *Id.* at 524.  "If the conclusion in

the state courts about the content of the [withheld evidence] was reasonable—not

9

necessarily correct, but reasonable—whatever those courts had to say about cumulative impeachment evidence would be beside the point." *Id.* The Court remanded for determination of that issue. *Id.* at 526.

Here, the majority correctly explains that *Wetzel* stands for the proposition that if a state court has reasonable, alternative grounds for denying relief, then constitutional error on the other ground "is 'beside the point.'" *Long*, 2020 WL 89109, at *7 (quoting *Wetzel*, 565 U.S. at 524). But here, unlike in *Wetzel*, the No Impact Conclusion was not based on *independent*, alternative grounds. Rather, as the dissent emphasizes, the No Impact Conclusion is "inextricably intertwined" with the state court's erroneous *Brady* analysis and therefore cannot be "considered 'alternative.'" *Id.* at *13 (Thacker, J., dissenting).

The state court explicitly tied its No Impact Conclusion to the erroneous preponderance of evidence standard it used in evaluating the favorability and materiality of each piece of withheld evidence. That is, the state court based its constitutionally required, cumulative materiality assessment on the findings it made regarding each piece of evidence individually, under the wrong standard:

> As to the cumulative [e]ffect of the items of evidence the defense alleges they did not receive, this court finds, ***based on the findings of fact and conclusions of law stated herein***, that . . . ***the cumulative [e]ffect of any items with any value is so minimal that it would have had no impact on the outcome of trial.***

*Id.* (Thacker, J., dissenting) (quoting J.A. 1358–59) (emphasis added).  Because the referenced "findings of facts and conclusions of law" were derived from the state court's misapplication of the *Brady* standard, that court's materiality assessment cannot be extracted as an alternative ground for relief.  *See id.* at *13–14 (Thacker, J., dissenting).

The majority claims that the dissent "goes too far" by stating that "*Wetzel* applies only if a proper reason for the state court's decision can be 'isolated from' another improper reason so as to be entirely 'separate[].'"  *Id.* at *8.  According to the majority, the two grounds in *Wetzel* were not entirely separate because "both turned on an assessment of the contents of the [withheld document]."  *Id.*  That is, in *Wetzel*, the document at issue was either (a) not exculpatory because its meaning was ambiguous, or (b) absent ambiguity, it was cumulative in light of the other impeachment evidence presented at trial.  *See Wetzel*, 565 U.S. at 524.

But, as the dissent explains, the majority misses the point.  *See Long*, 2020 WL 89109, at *13–14 (Thacker, J., dissenting).  True, the two grounds in *Wetzel* turned on an assessment of the same piece of withheld evidence; but the assessments were *analytically* distinct.  Here, in contrast, the favorability and materiality *analyses* are intertwined.  The state court's assessment of the cumulative effect of all the withheld evidence depended on that court's use of an incorrect standard to assess each piece of evidence individually.  Thus, the state court did not provide an

alternative ground for relief, free of constitutional error, which can now be relied on to uphold that court's decision. Therefore, this Court should grant the petition for rehearing en banc to conform the majority's decision to *Wetzel* and clarify that the "alternative ground" doctrine may not be used to uphold a state court decision when the alternative ground is intertwined with the constitutional error.

**II. THE MAJORITY ERRS IN FINDING THE NO IMPACT CONCLUSION REASONABLE BECAUSE (1) THAT CONCLUSION CONFLICTS WITH ESTABLISHED PRECEDENT ON *BRADY*'S FAVORABILITY PRONG, AND (2) THE MAJORITY FAILS TO FULLY CONSIDER THE CONTEXT AND IMPACT OF THE WITHHELD EVIDENCE.**

The majority decision conflicts with Fourth Circuit and Supreme Court precedent. The majority's conclusion (1) fails to recognize that the state court's constitutionally deficient *favorability* analysis as to each piece of withheld evidence plagued that court's *materiality* assessment, and (2) fails to consider the context of the state's case against Long in assessing the cumulative impact of the withheld evidence. Given these errors and the clarity of the controlling precedent, the state court decision is unreasonable "beyond any possibility of fairminded agreement" and warrants rehearing en banc. *See Harrington v. Richter*, 562 U.S. 86, 103 (2011).

The majority first erred by deeming the No Impact Conclusion reasonable even though the state court conducted an erroneous favorability inquiry into the suppressed evidence. *Brady*'s favorability inquiry is a necessary predicate to its materiality inquiry. *See Richardson v. Branker*, 668 F.3d 128, 145 (2012) ("At the

heart of [*Brady*'s materiality] inquiry is a determination whether the *favorable evidence* withheld from the defendant reasonably could be considered as placing the entire case in such a different light that confidence in the verdict is undermined.") (emphasis added). Without recognizing that the suppressed evidence was favorable to Long, the state court could not have "evaluated the probative force of the suppressed evidence" before it "undert[ook] the cumulative materiality inquiry." *Kyles v. Whitley*, 514 U.S. 419, 436 n.10 (1995); *see also United States v. Ellis*, 121 F.3d 908, 918 (4th Cir. 1997) (describing the materiality inquiry as considering the whole case and taking into account the effect of the suppressed evidence on the evidence admitted at trial).

Here, the state court, which concluded that the withheld evidence had no favorable tendency whatsoever, erred in at least three ways:

1.  It found that the SBI Reports—concerning the carpet fibers, paint, and hair found at the crime scene—were not favorable. This was contrary to *Kyles* because the weight and tendency of those reports favor Long. *See* J.A. 1659–60.

2.  It found that the sexual-assault kit evidence was not favorable. J.A. 1663. This conclusion "'interpreted the concept of favorable evidence too narrowly' because it equated favorability with exculpation." *Long*, 2020 WL 89109, at *17 (Thacker, J., dissenting) (quoting J.A. 1663).

3.  It failed to consider the impeachment value of the CPD's conflicting summary reports or of the withheld SBI Reports, especially compared to the testimony of CPD Officers. J.A. 1669–70. It is well established that "nondisclosure of evidence affecting credibility" falls within *Brady*. *Giglio v. United States*, 405 U.S. 150, 154 (1972).

Without a proper favorability assessment, which is central to the materiality inquiry, the majority erred in deeming the state court's materiality inquiry reasonable.

The majority's second error was that, in assessing the cumulative effect of the withheld evidence, it insufficiently considered the particulars of the case against Long, which is necessary under *Brady*'s cumulative materiality inquiry. *See Kyles*, 512 U.S. at 421. The dissent fully describes the evidence against Long, including that—though omitted from the majority's description—Long did not match the victim's initial description of her attacker. *Long*, 2020 WL 89109, at *14–15 (Thacker, J., dissenting). The victim told CPD that her attacker was a "yellow" or light-skinned black male, even though Long is unmistakably dark skinned. *Id.*

The majority also described Long's inability to impeach the detective who concealed the forensic test results as "peripheral." *Id.* at *10. But the suppressed evidence and related false testimony must be considered in context, based on how they enabled the prosecutor to improperly bolster the victim's identification. The prosecutor told the jury:

> [The victim's] testimony is not only accurate, but totally consistent with every piece of physical evidence existent. Everything she says happened that is capable of being corroborated by physical evidence . . . is so corroborated . . . . Every piece of physical evidence points unerringly to the fact that [the victim] told you what happened that night unerringly.

14

J.A. 536. This statement was not true. *Long*, 2020 WL 89109, at *21 (Thacker, J., dissenting). If the jury had seen the conflicting, withheld reports and the SBI test results not matching Long, the CPD investigator's contrary testimony and the victim's identification would have been undermined—not only by the absence of corroborating evidence, but also by forensic evidence pointing elsewhere.

The majority also unreasonably minimized the potential value of the suppressed biological evidence. *Id.* at *10 n.8. The record shows that, even in 1976, the sexual-assault kit had exculpatory value. The prosecutor at Long's trial testified to that value at the 2008 MAR hearing:

> [I]f I had known that they had those swabs then I would have been trying to find out what happened to them, because the first thing that should have been done is a test to determine whether any one of those groups [ABO grouping] showed up in the test different than the victim . . . . [I]f you found a PGM type 2 it couldn't have come from the victim. There would be a reason to get blood from the defendant.

J.A. 1150–51.

Because of the known value of sexual-assault kits at the time, Long's trial counsel asked if one had been collected. The prosecutor said no.[4] J.A. 1036. Of

---

[4] The prosecutor testified that he was reasonably certain that he did not know about the forensic examinations or the sexual-assault kit at the time of Long's trial. *See* J.A. 1145, 1149–51, 1154.

course, the CPD also collected the biological evidence for some purpose, but now—inexplicably—has no record of ever possessing it.  *See* J.A. 95–104.

Together, the circumstances surrounding the disappearance of the sexual-assault kit may demonstrate bad faith and constitute a due process violation under *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988).  At minimum, considered with the other withheld evidence, the handling of the sexual-assault kit would have cast further doubt on the investigation.  *See Kyles*, 514 U.S. at 445 (evidence providing opportunities to attack an investigation's thoroughness and good faith is favorable under *Brady*).

En banc review is necessary because the majority's holding that the No Impact Conclusion is reasonable conflicts with *Brady* and *Kyles* and with this Circuit's decision in *Richardson*.  The full court should resolve this conflict by clarifying that a constitutionally sound favorability assessment, including consideration of all the ways withheld evidence is helpful to the defendant, is at the core of the *Brady* materiality inquiry.

## III.    THE PETITION PRESENTS QUESTIONS OF EXCEPTIONAL IMPORTANCE.

Long's petition details an "extreme malfunction[] in the state criminal justice systems" that "habeas corpus proceedings are a guard against."  *See Harrington v. Richter*, 562 U.S. 86, 102 (2011).  Long has been incarcerated for more than 43 years and has unwaveringly maintained his innocence and sought the evidence to prove it.

Because of state action, piecemeal disclosure of favorable evidence first occurred several decades after he was convicted and after the state originally claimed such evidence did not exist. *Long*, 2020 WL 89109, at *3. As Judge Thacker wrote, denial of habeas relief at this time "would provide incentive for the state to lie, obfuscate, and withhold evidence for a long enough period of time that it can then rely on the need for finality." *Id.* at *22 (Thacker, J., dissenting). That, no one should abide.

## CONCLUSION

For all of these reasons, Long respectfully requests that this Court grant rehearing en banc.

Respectfully submitted,

/s/ Jamie T. Lau
Jamie T. Lau
N.C. State Bar No. 39842
Wrongful Convictions Clinic
Duke University School of Law
Box 90360
Durham, North Carolina 27708
Telephone: (919) 613-7764
Fax: (919) 613-7262
E-mail: jamie.lau@law.duke.edu

/s/ Theresa A. Newman
Theresa A. Newman
N.C. State Bar No. 15865
Wrongful Convictions Clinic
Duke University School of Law
Box 90360
Durham, North Carolina 27708
Telephone: (919) 613-7133
Fax: (919) 613-7262
E-mail: newman@law.duke.edu

/s/ G. Christopher Olson
G. Christopher Olson
N.C. State Bar No. 21223
917 W. Johnson St.
Raleigh, NC 27605
Telephone: (919) 624-3718
E-mail: gchrisolson15@gmail.com

*Counsel for Petitioner-Appellant*        Dated: January 22, 2020

## CERTIFICATE OF COMPLIANCE

1.     This petition complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

    [ X ] this petition contains [*3,882*] words.

    [   ] this petition uses a monospaced type and contains [*state the number of*] lines of text.

2.     This petition document complies with the typeface and type style requirements because:

    [ X ] this petition has been prepared in a proportionally spaced typeface using [*Microsoft Word 2016*] in [*14pt Times New Roman*]; *or*

    [   ] this petition has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated:  January 22, 2020            /s/ Jamie T. Lau           
                                       *Counsel for Appellant*

**CERTIFICATE OF FILING AND SERVICE**

I hereby certify that on this 22nd day of January, 2019, I caused this Petition

for Rehearing En Banc to be filed electronically with the Clerk of the Court using

the CM/ECF System, which will send notice of such filing to all registered

CM/ECF users.

/s/ Jamie T. Lau
*Counsel for Appellant*